663 A.2d 232

Mary DIEHL, on Behalf of Michael BEAVER, Appellee,

v.

Wayne BEAVER, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 16, 1995.

Filed Aug. 10, 1995.

---

Gary E. Norton, Bloomsburg, for appellant.

Before WIEAND, BECK and BROSKY, JJ.

WIEAND, Judge:

This is an appeal from an order directing the appellant, Wayne Beaver, to contribute to the cost of providing a college education for his son. Because the trial court committed error in determining the amount of the order, we reverse and remand.

Wayne Beaver and Mary Diehl, formerly husband and wife, are the parents of two children: Michael, born on April 17, 1975, and Timothy, born on October 3, 1977. Wayne paid child support pursuant to court order until Michael was graduated from high school. The parties then agreed that Wayne was no longer required to pay support for Michael, and the order was modified to require payment of $313.00 per month for Timothy's support. In the fall of 1993, however, Michael began attending Pennsylvania State University. On August 6, 1993, therefore, Mary filed a complaint seeking to compel support payments from Wayne for Michael's college expenses. Following a hearing, a court-appointed master issued a recommended order for support, and both parties filed exceptions. On May 19, 1994, the trial court ordered Wayne to pay $245.00 per month toward the cost of Michael's postsecondary education, as well as $50.00 per month on account of accumulated arrearages. Wayne appealed.

In matters involving support, a reviewing court will not disturb an order of the trial court unless there has been an abuse of discretion. *Ball v. Minnick*, 538 Pa. 441, 448, 648 A.2d 1192, 1196 (1994); *Oeler by Gross v. Oeler*, 527 Pa. 532, 537, 594 A.2d 649, 651 (1991); *Connor v. Connor*, 434 Pa.Super. 288, 290, 642 A.2d 1136, 1137 (1994). An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. See: *Drawbaugh v. Drawbaugh*, 436 Pa.Super. 57, 59, 647 A.2d 240, 241 (1994); *Kelly v. Kelly*, 430 Pa.Super. 31, 34, 633 A.2d 218, 219 (1993); *Fitzpatrick v. Fitzpatrick*, 412 Pa.Super. 382, 386, 603 A.2d 633, 635 (1992).

Following his divorce, Wayne remarried. His second wife is an employee of Bloomsburg University. Evidence was

introduced that dependent stepchildren of employees of Bloomsburg University are entitled to a waiver of tuition if they matriculate at that school.[1] Despite testimony to the contrary, the court found that Michael could not qualify under this policy because he did not permanently "reside" with his father and stepmother and because he had not been claimed as a dependent on their income tax returns. In view of the written statement of this policy, we are reluctant to fault the trial court for rejecting the oral explanation for the manner in which its policy is applied by Bloomsburg University. Resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. See: *Perlberger v. Perlberger,* 426 Pa.Super. 245, 263, 626 A.2d 1186, 1196 (1993); *Campbell v. Campbell,* 357 Pa.Super. 483, 490, 516 A.2d 363, 366 (1986); *In re Cummings Estate,* 330 Pa.Super. 255, 263, 479 A.2d 537, 541 (1984). It is not enough that we, if sitting as a trial court, may have made a different finding.

■ A court may not order support for postsecondary educational costs where "[u]ndue financial hardship would result to the parent." 23 Pa.C.S. § 4327(f)(1). In the instant case, Wayne had a monthly income of $2350.00. He was required to make monthly support payments in the amount of $313.00 for the parties' younger child and $245.00 per month for Michael's college education. Wayne contends on appeal that because income and expense statements which he submitted to the trial court demonstrated that he had monthly expenses in the amount of $2500.00, the court's order imposed an undue hardship on him.[2] This is a close question, and the trial court did not make a specific finding as to the amount, if any, which appellant could pay without undue hardship. However, the trial court determined, as appropriate under the statute, that Michael's educational costs were $9112.00 per year. The court then determined that Wayne's equitable share of this amount would have been $5467.00 per year, or

1. Michael did not apply for admission at Bloomsburg University.

2. This income and expense statement is not part of the certified record before this Court.

$455.00 per month. Taking into account Wayne's other expenses, the court reduced this to $245.00 per month and concluded that this was a "reasonable" amount. While not specifically invoking the words "undue hardship", therefore, it is nevertheless clear that the court was concerned with Wayne's ability to fulfill all his financial obligations. In light of Wayne's monthly income of $2350.00, we are unable to hold that the trial court's determination was an abuse of discretion. See: *Byrnes v. Caldwell*, 439 Pa.Super. 574, 578–81, 654 A.2d 1125, 1128 (1995).

■ Wayne also contends that Mary's earning capacity was greater than the monthly income attributed to her by the trial court. In determining one's ability to provide support, the focus is generally on one's earning capacity rather than on the person's actual earnings. *Kelly v. Kelly, supra* at 34, 633 A.2d at 219; *Singleton v. Waties*, 420 Pa.Super. 184, 190, 616 A.2d 644, 647 (1992); *Monsky v. Sacks*, 403 Pa.Super. 40, 44, 588 A.2d 19, 21 (1991). A person's earning capacity "is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Myers v. Myers*, 405 Pa.Super. 290, 297, 592 A.2d 339, 343 (1991); *Goodman v. Goodman*, 375 Pa.Super. 504, 508, 544 A.2d 1033, 1035 (1988). Here, Mary was employed by Big Brothers and Big Sisters of Columbia County at a salary of approximately $16,000.00 per year. From 1980 to 1985, Mary had been employed as a teacher and had earned a substantially greater income. She testified, however, that recent attempts to find similar positions had been unsuccessful. The trial court accepted her explanation and attributed to her a monthly income of $1300.00. In light of the factual support for the trial court's finding, this was not an abuse of discretion. See: *Klahold v. Kroh*, 437 Pa.Super. 150, 649 A.2d 701 (1994) (earning capacity should generally not be based on greater prior earnings where there is no evidence of a deliberate reduction in income to avoid a support obligation).

When ordering a parent to contribute to the costs of a child's college education, a trial court must consider all relevant factors, including the "ability of the student to contribute to the student's expenses through gainful employment." 23 Pa.C.S. § 4327(e)(6). Here, the trial court attributed a $1140.00 earning capacity to Michael during the academic year. The court, however, allocated this sum for the payment of incidental expenses during the school year such as "snack foods, movies, clothing and social affairs," rather than for direct educational expenditures. During the summer months the court also attributed an earning capacity of $1800.00 to Michael. The court found, however, that this income would be offset by Michael's living expenses during the summer. These amounts, totalling almost $3000.00, represented a substantial amount for incidental or indirect expenditures. Given the limited income available to the appellant father and the absence of evidence to support the trial court's finding of need for such incidental items, it appears that the trial court was overly generous to the son when it refused to require that he shoulder a part of the financial burden of obtaining the college education which he seeks.

This becomes abundantly clear when we consider that the trial court also refused to consider other funds which would have been available to the son if he had made any effort to obtain them. Thus, the appellant father complains that the trial court committed serious error when it refused to take into account student loans available to assist Michael in obtaining a college education. The undisputed evidence was that Stafford loans were available to Michael in the amount of $2625.00 during his freshman year, $3500.00 during his sophomore year, $5500.00 during his junior year, and at least $5000.00 during his senior year. The trial court held, however, that it was required to consider "only educational loans received by the student" and that the "financial circumstances of the parents in this case [did] not warrant that Michael avail himself of the Stafford Loan. . . . "

The trial court's belief that it could ignore the availability of these loans unless they were actually received by the student is based on its interpretation of the statute governing postsecondary educational costs, which provides, in part, that a court shall consider the "receipt of educational loans and other financial assistance by the student." 23 Pa.C.S. § 4327(e)(3). However, the statute also makes clear that an "award for postsecondary educational costs may be entered only after the child or student has made reasonable efforts to apply for scholarships, grants and work-study assistance." 23 Pa.C.S. § 4327(a). See also: *McGettigan v. McGettigan*, 433 Pa.Super. 102, 639 A.2d 1231 (1994) (case remanded for a "determination regarding [student's] receipt of educational loans and other financial assistance"); *Miller v. Miller*, 353 Pa.Super. 194, 509 A.2d 402 (1986) (trial court erred by failing to consider student's "potential contribution . . . in light of his parents' financial circumstances"); *Commonwealth ex rel. Hanerkam v. Hanerkam*, 221 Pa.Super. 182, 289 A.2d 742 (1972) (availability of loans "does not negate the duty of the parent but does merit cognizance thereof when a serious question of undue hardship is presented"). Thus, it appears that applying for financial assistance when available is generally an affirmative obligation on the part of the student, unless his or her support needs can otherwise be met by the parents with relative ease. Over the course of a four year college education, these loans would represent an amount in excess of $16,000.00 in funds available to Michael. The financial circumstances of the parties do not indicate a standard of living whereby such a significant sum of money can be readily ignored. We hold, therefore, that the trial court erred when it refused to consider student loans available to the student.

On remand, the trial court should consider some or all of the earnings of the student, as well as student loans available to him, and reduce the amount of the order accordingly.

The order of the trial court is reversed, and the case is remanded to the trial court for reconsideration and the entry

of an order consistent with the foregoing opinion. Jurisdiction is not retained meanwhile.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I agree with the majority that this matter must be remanded to the trial court for further consideration. I join in that portion of the majority opinion which holds that the trial court gave proper treatment to the Bloomsburg University tuition waiver policy but failed to give proper consideration to Michael's ability to contribute to the costs of his own education through employment.

I write separately because I do not agree with the majority's determination that the trial court evaluated whether the support order imposed an undue financial hardship on the father. I also disagree with the majority's conclusion that the court, in fashioning the support order, was mandated to consider the Stafford loans for which Michael was eligible but did not apply.

In calculating a postsecondary support order for educational costs, the trial court must fashion a preliminary support order based on the facts before it. It must then evaluate whether the order imposes an undue hardship on the parent. 23 Pa.C.S. § 4327(f)(1). Under the undue hardship standard the court may deny postsecondary support altogether or may mold an order so that it does not impose an undue hardship.

In this case father asserts that "the imposition of the order at issue creates an undue hardship upon ... [him], given his other child support expenses, his other general expenses, and his net income."

I conclude that the trial court issued its order without determining whether it would impose an undue hardship on the father.[1] Rather, the court improperly and simply based

1. Although the majority states that such a determination was made, I am unable to find any indication in the trial court's opinion that the undue hardship standard was applied, despite appellant's specific exception based on an undue financial hardship. Moreover, even if such

its order on the support guidelines. Under the guidelines the court looked to the amount of support that father would have been required to pay for two children. The court then reduced that sum by the amount of support the father was actually paying for Michael's sibling and arrived at a figure which the court determined to be the father's educational obligation for Michael. This was clearly error.

The rationale underlying the guidelines is applicable to minor children and not to postsecondary education. The guidelines anticipate that parents will be required to make sacrifices and perhaps even undergo hardships in order to support their minor children. This strict standard is not appropriate for support of an adult child seeking postsecondary education. "The duty of a parent to provide postsecondary education for a child is not as exacting a requirement as the duty to provide food, clothing and shelter for a child of tender years unable to support himself." 23 Pa.C.S. § 4327(a). The trial court therefore abused its discretion in entering an order for postsecondary educational support based on the guidelines.

The correct method to calculate support for postsecondary education is based on an analysis of educational costs as defined in the statute, 23 Pa.C.S. § 4327(j), adjusted by the student's own contribution to his education through grants and scholarships, 23 Pa.C.S. § 4327(d), and consideration of the relevant factors listed in 23 Pa.C.S. § 4327(e). The amount is then molded, if necessary, to avoid an undue financial hardship on the parent. 23 Pa.C.S. § 4327(f)(1).

a determination were made, this record lacks findings as to appellant's legitimate and reasonable living expenses. Such findings are necessary to support a determination regarding undue hardship. *See Bedford v. Bedford,* 386 Pa.Super. 349, 563 A.2d 102 (1989).

Although the transcript of the master's hearing in this matter reflects that appellant submitted evidence sufficient to allow the trial court to make the required findings regarding his expenses, the trial court failed to do so. The trial court did not conclude that appellant failed to meet his burden of proving undue hardship by the fair weight and preponderance of the evidence. *Compare Byrnes v. Caldwell,* 439 Pa.Super. 574, 578–81, 654 A.2d 1125, 1127–28 (1995). Rather, the trial court ignored the evidence submitted regarding expenses and failed to make any finding whatsoever regarding undue hardship.

Most postsecondary students have resources other than their parents to finance their education; for example, their own earnings, work study earnings, scholarships, grants and possibly loans. A parent, however, is expected to contribute except where an undue financial burden exists. A question arises as to whether a parent's obligation is reduced if the student is eligible for loans. The majority's view is that the trial court erred in this case because the trial court did not consider the student's eligibility for loans. I find the majority has misread the statute.

Section 4327 of the Domestic Relations Code, 23 Pa.C.S. § 4327, addresses parental obligation for postsecondary education. Section 4327(a) requires that the student make "reasonable efforts to apply for scholarships, grants and work-study assistance." The section does not cover loans. Loans are specifically covered in section 4327(e)(3) which instructs the court to consider "receipt of educational loans and other financial assistance" as a factor in determining the appropriate amount of a parent's contribution to educational costs. Under § 4327(a) the student is required to make reasonable efforts to apply for scholarships, grants, and work-study assistance. Under 4327(e)(3) there is no parallel requirement that the student make reasonable efforts to apply for loans. Rather, that section requires consideration only of loans actually received by the student. Furthermore, loans are treated differently from scholarships and grants in calculating educational costs under the statute. Loans are treated as a factor to be considered in determining the amount of the parent's obligation and are not required to be deducted from educational costs prior to determining that obligation. On the other hand, scholarships and grants must be deducted from educational costs before the court calculates the parent's obligation. 23 Pa.C.S. § 4327(d).

It is thus clear from the structure of 23 Pa.C.S. § 4327 that loans are treated differently from other financial awards. As to loans the trial court has a measure of discretion which it does not have with respect to grants and scholarships. The language of section 4327(e)(3), the section relating to loans,

permits, but does not require, the court to deduct some or all of the amount of loans the student receives from the parent's support obligation. The statute recognizes that loans impose an indebtedness upon the student which it may or may not be equitable for the student to undertake. By contrast, other forms of financial assistance which do not impose the obligation of repayment on the student are always automatically deducted under section 4327(d).

Of course, the order fashioned by the court by application of the process set out in the statute may, as a practical matter, require the student to apply for loans if there is a shortfall between the parents' obligations and total educational costs. Nevertheless the statute itself imposes no obligation to apply for loans and clearly provides that it is receipt of the loan, not eligibility for it, which may be considered by the court in fashioning a support order. It is a misreading of the statute for this court to remand for the trial court to reduce a parent's obligation based on the eligibility of the student to receive loans where the student did not apply for and never received loans.[2]

This construction of the statute does not make student loans irrelevant to the financing of postsecondary education. As noted above, proper application of the statute will in many instances result in an order which makes it helpful or necessary for the student to apply for loans. It is appropriate for the court, in considering the various factors which, under the statute, are relevant to the amount of the support obligation, to remember that the parents' funds are not the only source of financing for education and that loans may be available to the student to fund his education if the parents are unable to do so. *See Commonwealth ex rel. Hanerkam v. Hanerkam,* 221 Pa.Super. 182, 289 A.2d 742 (1972) (although availability of loans does not negate parent's duty of support, it "does merit cognizance ... when a serious question of undue hardship is

2. *McGettigan v. McGettigan,* 433 Pa.Super. 102, 639 A.2d 1231 (1991), cited by the majority, does not hold to the contrary. In that case we remanded for consideration of the student's *"receipt* of educational loans and other financial assistance." This disposition was entirely in keeping with my interpretation of sections 4327(a) and 4327(e)(3).

presented"). I recognize that for many, if not most, families, loans are an indispensable part of the total financial package for postsecondary education. However, our legislature has determined that for purposes of determining the postsecondary educational support obligations of parents, loans are to be treated differently from other monetary awards.

Accordingly, I cannot conclude that the trial court erred in failing to consider the amount of loans for which Michael was eligible but for which he did not apply.

Like the majority, I would reverse the order of support and remand for further proceedings.