544 A.2d 1033

**Donna R. GOODMAN, Appellant,**

v.

**Alan W. GOODMAN.**

Superior Court of Pennsylvania.

Submitted Jan. 4, 1988.

Filed July 25, 1988.

Judith A. Huber, Assistant District Attorney, Lebanon, for appellant.

Horace M. Ehrgood, Lebanon, for appellee.

Before CIRILLO, President Judge, and WATKINS and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Lebanon County sustaining Mr. Goodman's exceptions to a master's recommendation of spousal support and entering an order for $15.00 per week, plus $5.00 per week upon the accumulated arrearages. We affirm.

On January 23, 1987, following the parties' separation, Mrs. Goodman filed a complaint for spousal support. The parties stipulated to Mrs. Goodman's entitlement to support and, on March 26, 1987, a hearing was held before a Domestic Relations Hearing Officer [DRHO] to determine the appropriate amount. An award of $50.00 per week, plus $5.00 towards the arrearages, was recommended. Mr. Goodman's exceptions were sustained by the trial court, which then applied the local guidelines to determine the order from which Mrs. Goodman now appeals.

In reviewing such an order, this court will reverse only where the record indicates a clear abuse of discretion and does not support the trial court's order. *Stredny v. Gray*, 353 Pa.Super. 376, 510 A.2d 359 (1986). The trial court possesses wide discretion as to the proper amount of support payments and, unless the surrounding circumstances suggest the court abused its discretion, its judgment will not be disturbed. *Biler v. Biler*, 353 Pa.Super. 49, 508 A.2d 1261 (1986).

The record shows that a thorough inquiry into the parties' situations was made. The Lebanon County support guidelines were applied and no challenge to their validity is

raised.[1]  It is the trial court's attribution of an income to Mrs. Goodman, based on her earning capacity rather than on her current income, which is central to this appeal.  Mr. Goodman argues that there was substantial evidence on the record to support the trial court's action in declining to accept the recommendation of the DRHO and, instead, setting a different amount after its own review of the evidence.  Mrs. Goodman argues that, absent a clear abuse of discretion by the DRHO, and so long as the record contained sufficient evidence to support the recommendation, the trial court erred in sustaining the exceptions and entering an order in an amount other than that recommended.

We first note that the findings of the DRHO were only advisory and not in any way binding on the trial court. *See* Pa. R.C.P. 1910.12, sections (d) (hearing officer shall file report containing *recommendation* with respect to entry of an order), (f) (absent exceptions, court shall *review report* and, *if approved,* enter a final order), and (g) (following argument on exceptions, court shall enter *appropriate* order) (emphasis added).  Because the procedure followed under this rule involves, "in essence substantially a master's hearing, akin to a master's hearing in divorce", explanatory comment to Rule 1910.12, the cases addressing the use of a divorce master's report and recommendations are apposite to actions for support under this rule. *See, e.g., McBride v. McBride,* 335 Pa.Super. 296, 484 A.2d 141 (1984).  While such a report is to be given the fullest consideration, especially with regard to the credibility of witnesses, a trial court is required to review the report to determine if the recommendations are appropriate. *Reed v. Reed,* 354 Pa.Super. 284, 511 A.2d 874 (1986).  It is the sole province and the responsibility of the court to set an award

---

1. Mr. Goodman argues that the guidelines should not have been applied since the prerequisite to their application, proof that the dependant spouse needs support, was not met by Mrs. Goodman.  His argument in this regard that the parties were on substantially equal footing in income-producing capacity and ability to cover their own expenses is, however, irrelevant since the parties stipulated to Mrs. Goodman's entitlement.

of support, however much it may choose to utilize a master's report. We, therefore, cannot accept appellant's argument that it was an abuse of discretion for the trial court to alter the amount of support recommended by the DRHO if there was adequate evidence to support that recommendation.

Having dispensed with this argument, we now turn to a review of the substantive aspect of the order. When determining the support obligation of a spouse, the trial court must consider income, potential earning capacity and other property and financial resources. *Machen v. Machen*, 278 Pa.Super. 135, 420 A.2d 466 (1980). A person's "earning capacity," with respect to support proceedings, is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training. *Commonwealth ex rel. Simpson v. Simpson*, 287 Pa.Super. 356, 430 A.2d 323 (1981). It has long been established that the court may look beyond the actual present earnings of a party. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975); *McMahon v. McMahon*, 167 Pa.Super. 51, 74 A.2d 718 (1950).

It is on this last point that the parties in this case diverge. Mrs. Goodman points to her erratic employment history during the time between the filing of her petition and the hearing, at which she claimed a limitation of her employment prospects because of the splint on her arm.[2] Mr. Goodman endorses the implicit rationale of the trial court that these factors were temporary in nature and that both

2. We note, as did the trial court, that Mrs. Goodman's arm had been in the splint since November of 1986 and that she testified that she had chosen to work rather than avail herself of Workman's Compensation benefits. Indeed, the record shows that she was employed full-time throughout, until the job was discontinued in January of 1987. The fact that she had worked approximately half-time in the weeks between the end of her job and the date of the hearing appears to have more to do with her reliance on word-of-mouth advertising and the quite natural time period required to make the necessary inquiries and applications for other full-time employment.

Mrs. Goodman's previous employment history and her real-istic prospects for full-time employment in the immediate future did not warrant an award reflective of a very small window in time.

■ The court concluded, with regard to the income to be attributed to Mrs. Goodman, "upon our reflection, it ap-pears that Mrs. Goodman would have the capacity to be earning slightly more than she presently enjoys." In fact, the amount attributed to her, $200.00 per week net, is entirely consistent with her previous year's earnings at the job which was, through no fault of Mrs. Goodman's, elimi-nated early in 1987. This job had paid her an hourly rate of approximately $5.00 per hour. She was charging and re-ceiving $5.00 per hour for her services at the time of the hearing, and the record shows that $5.00 per hour was at the low end of what she anticipated in future employment with any one of a number of specific entities where she either had recently applied, or intended to apply, for work. We find no abuse of discretion in fixing Mrs. Goodman's earning capacity at a level which she had so very recently demonstrated, and was continuing to demonstrate, was attainable by her, and which, by her own testimony, was the minimum she could expect in her next full-time position. Her testimony also indicated that her opportunities for full-time employment in the immediate future were numer-ous and, it can be assumed, fairly open to a person with her experience and work history. The trial court's conclusion as to Mrs. Goodman's earning capacity, and the income it attributed to her income for support purposes, was realistic rather than theoretical. *Commonwealth ex rel. Simpson, supra.*

We hold that the findings [3] and conclusion of the trial court to be amply supported by the record and hereby affirm its order.

**3.** The court also reviewed the expenses of the parties' as it reflected their respective abilities to meet them, their prospects for increasing their income potential and the assets and liabilities each had assumed responsibility for after their separation and concluded that "the in-

510

## JUDGMENT

ON CONSIDERATION WHEREOF, it is hereby ordered and adjudged by this Court that the Order of the Court of Common Pleas of Lebanon County is affirmed.

come and expense statements offered to the DRHO generally do not reflect extraordinary expenditures in light of the parties' incomes."